EFFIE C. McLEAN, Ex'x of H. M. McLEAN, *v.* JAMES T. LEACH and others.

A is sued by the executrix of B, on a note given for the purchase of land sold by the executrix for assets; on the trial, A offers as a set off, a judgment paid by him as B's surety: *Held*, in administrations granted prior to 1st July, 1869, not to be a counter-claim.

In administrations granted prior to 1st July, 1869, the creditor who first proceeds upon his judgment *quando*, and fixes the administrator with assets, must first be paid, without any regard to priority of judgments.

(*Ransom* v. *McClees*, 64 N. C. Rep. 17; *Brandon* v. *Allison*, 66 N. C. Rep. 532; *Henderson* v. *Burton*, 3 Ired. Eq. 259, cited and approved.)

CIVIL ACTION tried before *Buxton, J.*, at the Fall Term, 1872, of HARNETT Superior Court.

The following is the case stated by his Honor and sent to

this Court with the transcript of the record of the Superior Court.

Suit was commenced 10th July, 1871, upon a note for $588.60, due twelve months after the 2d April, 1869, given by the defendant, Dr. James T. Leach, with the other defendants as his sureties, payable to the plaintiff, as executrix of her deceased husband, Hector M. McLean, for the price of a tract of land, sold by her under an order of Court, for the purpose of assets, and bid off by Dr. Leach.

The allegations of fact contained in the complaint, answer and replication are not controverted. Additional facts, matters of record, were put in evidence by defendants, as follows:

The plaintiff qualified as executrix of Hector M. McLean, at December Term, 1863, of Harnett County Court. She filed her petition and obtained license to sell the land of her testator, for assets, at December Term, 1866. The sale was made 2d April, 1869, on a credit of twelve months, with interest from date. The land was sold in eight separate lots or parcels, and the aggregate of sales was $3,270.45. Lot No. 8 was bid off by Dr. Jas. T. Leach for $588.60, who gave note and security, as did the other purchasers.

The sale was reported at Fall Term, 1869, of Harnett Superior Court, was approved, and orders for collection and title, upon the payment of the purchase money were made. It also appeared in evidence, as matters of record, that there were outstanding judgments against the estate of the testator, to the amount of $6,251.84, then pending in Harnett Court, all being in the nature of judgments *quando*. Two of these, one for $164.81, and another for $1,445.09, amounting to $1,609.90, were given against the executrix in 1867, the remainder being rendered at Fall Term, 1869, and were all upon notes of the testator, except one which was upon an open account. The judgment set out in the answer of the defendants, and insisted upon as a counter claim, is re-

corded against her as executrix of Hector M. McLean,. principal, and Dr. Jas. T. Leach, as surety for $500 principal money, and $158.83 interest, and $40.40 costs, was so far as she, the executrix was concerned, absolute as to $5 thereof only, and for costs, and *quando* for the balance. Dr. Leach paid the whole of it.

Upon this showing, the defendants insisted that while admitting the two judgments rendered in 1867, amounting to $1,609.90, had priority over his claim, yet by the payment by Dr. Leach, as surety for Hector M. McLean, of the judgment recovered in the Circuit Court of the United States in 1868, that he was, by virtue of the statute, placed upon a footing as judgment creditor of the said McLean, and as such was entitled to priority over the judgments recovered in 1869; and as the aggregate sales of the land amounted to $3,270.45, that deducting therefrom $1,609.90, there still remained 1,660.56 applicable to the counter claim. And in as much as his counter claim for money paid was in excess of the claim made by the plaintiff, that the defendants were entitled to a verdict and judgment for the excess in favor of Dr. Leach, and for costs, and the defendants asked his Honor so to charge.

The plaintiff insisted :

1. That while admitting that the defendant, Dr. Leach,. by the payment of the judgment in the Circuit Court of the United States, and by force of the statute referred to, was placed upon the footing of a judgment creditor of the estate of the testator, yet the said judgment was but a judgment *quando*, as to all but $5 and costs, and was only entitled to be paid *pro rata*, along with other judgments of a similar character, outstanding against the estate, and that the plaintiff was entitled to receive the proceeds of the land sold to make the apportionment.

2. That the sale notes for the other seven lots sold might never be realized, and until that was done, the executrix

would not have assets in hand, to meet the two judgments recovered in 1867, which were admitted to be entitled to priority.

His Honor charged the jury that upon the case presented, the plaintiff was entitled to recover the amount of the note, principal and interest.   Defendants excepted.

The jury returned a verdict for the plaintiff.  Rule for a new trial; rule discharged.  Judgment, and appeal by defendants.

*Fuller*, and *Moore & Gatling*, for the appellants.
*McKay, Jr.*, contra.

BOYDEN, J.   Let it be granted, as settled in the case of *Ransom* v. *McClees*, 64 N. C. Rep. 17, that when it is admitted by the plaintiff, or when it otherwise clearly appears, that the assets are fully sufficient to discharge all the debts of the testator, or all of the same dignity, the defendant would be entitled to his counter claim or set off; still in the principal case, the defendant would not be entitled to the relief demanded, for the reason that it would take from the executor the right to prefer claims of equal dignity, and confer that right upon the creditor.  *Brandon* v. *Allison*, 66 N. C. Rep. 532.   And for the further reason, that it would involve a full account of the administration of the estate, as far as the same had progressed, before it could be determined whether the defendant was entitled to any part of his counter claim, and if any, what part thereof; and so on through the whole administration, in every case where such counter claim was relied on, the same account would be required. In the case of *Henderson* v. *Burton*, 3 Ired. Eq. 259, it is said that *quando* judgments were to be paid according to their priority.   That was a case of a creditor's bill filed after the rendition of the *quando* judgments, where no further steps could be taken against the executors, and where all those

creditors in the *quando* judgment were enjoined from further proceedings on their *quando* judgments.

The Court in that case, instead of the rule that equality was equity, and paying all *pro rata*, adopted the principle that the most vigilant was to be preferred, and therefore decided that the *quando* judgments were to be paid according to priority. But this decision does not cover the case of *quando* judgment creditors where they must proceed to fix the executor with assets before they can have execution for their debts; and we hold upon the very principle upon which that case was decided, that the creditor that first proceeds upon his *quando* judgment and fixes the administrator with assets, must be first paid without any regard to the priority of judgments. As our whole system in this regard has been changed, this opinion can affect only such cases as are yet to be decided under the law where administration had been granted previous to the first day of July, A. D. 1869.

PER CURIAM.                    Judgment affirmed.